UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America, | |
| Plaintiff, | |
| v. | Civil Action No.: 1:20-cv-1607 (GTS/TWD) |
| $179,710 in U.S. Currency, | |
| Defendant. | |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

The United States of America brings this verified complaint for forfeiture *in rem* against the above-captioned assets (the "defendant currency") and alleges as follows:

**NATURE OF THE ACTION**

This is an action *in rem* brought pursuant to 21 U.S.C. § 881(a)(6) and Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions. Forfeiture is sought of the defendant currency as money furnished or intended to be furnished in exchange for a controlled substance and proceeds traceable to such an exchange, in violation 21 U.S.C. § 841

**THE PARTIES**

1. Plaintiff is the United States of America.

2. The defendant currency – $179,710 in U.S. Currency – is in the custody of the United States.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. This Court has *in rem* jurisdiction over the defendant currency pursuant to 28 U.S.C. § 1355(b).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395.

**FACTS**

6. Kristle Walker flies around the country transporting large amounts of cash for others.

7. For example, in September 2019 and July 2020, authorities seized more than $200,000 from Walker at airports as suspected drug proceeds. Although the funds seized from Walker in 2019 are not at issue in this case, the two seizures involve overlapping facts. The 2019 seizure occurred at Los Angeles International Airport, in California (LAX), and $30,700 was seized from Walker and even more was seized from her associate, Calvin Holland, of Poughkeepsie, New York. Notably, after Walker told law enforcement that the cash she was carrying belonged to her, she stated that she wanted to "tell the truth" and that she was transporting several thousand dollars for Holland. She then signed a Disclaimer of Ownership acknowledging that she had no right to Holland's money.

8. This case involves $179,710 that authorities seized from Walker at Albany International Airport, in New York (ALB), in July 2020. As explained in more detail below, this time: (a) Walker – who has claimed limited income for several years on her federal tax returns, and was collecting unemployment compensation at the time of the seizure – was carrying a large sum of money in a carry-on bag that she did not know the combination to, (b) she was attempting to travel on a one-way ticket purchased the same day by a third party, (c) a K9 positively alerted to the odor of drugs on the money found in the baggage she was transporting, and (d) an individual with a history of drug trafficking convictions, who identified himself to authorities as "Dave" and

who Walker falsely identified as her brother, was waiting outside of the room where Walker was being questioned and said he was there to pick up her baggage.

**Law Enforcement Seizes Money From Kristle Walker And An Associate In September 2019**

9. On September 19, 2019, Calvin Holland was traveling from John F. Kennedy International Airport, in New York, to LAX. During the preflight screening process, a Transportation Security Administration (TSA) officer noticed a large amount of cash in Holland's backpack. TSA allowed Holland to pass through security but notified law enforcement. Authorities ran a background check on Holland and learned that he had a history of drug-related convictions, including for drug trafficking. They relayed this information to DEA in Los Angeles.

10. When Holland arrived at LAX, he met Walker at baggage-claim. Walker – who had just arrived on a flight from New York – was carrying only a purse. When the two left the terminal, they were approached by DEA task force officers (TFOs), who identified themselves as such. Walker and Holland agreed to answer the TFOs' questions.

11. Walker explained that she was in Los Angeles "to shop and [for] pleasure," and that she planned "to hang out a few days then … shop for make-up supplies." When asked whether she had purchased her own ticket, Walker told DEA that Holland had purchased it for her. She also stated that she did not know whether her ticket was one-way or round-trip; that she had not booked a hotel for her stay; that she brought no luggage on her trip; and that she planned to buy a change of clothes and toiletries in Los Angeles.

12. When asked whether she was carrying "narcotics, contraband, or a large amount of cash," Walker responded "no, I only have $6,000 cash in my purse." Walker subsequently agreed to accompany the TFOs to their office to answer additional questions.

13.     While at the DEA, Walker initially stated that the money she was carrying "is all mine."  She later recanted her story, stating that she wanted to "tell the truth."  Walker then explained that, of the money she was carrying, all but $2,000 belonged to Holland.

14.     Walker then filled out and signed a form entitled Disclaimer of Ownership of Currency, in which she acknowledged that she is "not the owner of" a portion of the funds she was carrying.  She wrote on the form that the money belonged to "Calvin" who had provided it to her "2 days ago at home."

15.     Walker consented to DEA searching her purse, which contained $30,770.  That money was separated into five bundles that were each bound by rubber bands.

16.     Holland, who was interviewed separately, denied that any of the money in Walker's possession belonged to him.

17.     Holland stated that he had not yet made transportation or hotel reservations, and that he was carrying $15,000 so that he could buy a home at auction for his home-restoration business.  Holland was unable to provide any information about the auction he planned to attend or the home that he hoped to purchase.

18.     Authorities searched Holland's backpack and discovered multiple bundles of cash, each wrapped in rubber bands, and stored inside of a vacuum sealed pouch.  They then searched his shoulder bag and found two bundles of cash, each wrapped in rubber bands.  In total, Holland was carrying $36,010.

19.     A properly trained drug detection dog, who is trained to alert both for narcotics and marijuana, positively alerted to the scent of drugs on both the cash seized from Walker and the cash seized from Holland.

**Law Enforcement Seizes The Defendant Currency From Walker In September 2020**

20.     On July 27, 2020, a third party purchased a one-way ticket for Walker to travel that same day from ALB to Oakland International Airport, in California.

21.     During the preflight screening process, Walker's carry-on suitcase was flagged by TSA for further inspection.

22.     TSA officials attempted to open her carry-on but were unable to do so because it was locked. Walker stated that she did not know the combination and asked if she could make a phone call to find out. Walker then made a phone call, explained the situation to the person on the other line, asked for the combination, and unlocked the bag.

23.     Once Walker unlocked the suitcase, a TSA officer noticed a large quantity of cash inside, concealed in between articles of men's size 30x32 pants. There was no other clothing or toiletries in the suitcase.

24.     A deputy with the Albany County Sheriff's Office arrived and asked Walker how much money was in the suitcase. She refused to answer.

25.     The deputy then ran Walker's name through law enforcement databases and learned that she had an outstanding bench warrant in Saratoga County, New York. Walker was placed into custody and transferred, with the suitcase, to the Sheriff's substation inside of the airport.

26.     When a TFO with DEA arrived at the Sheriff's substation, a man sitting immediately outside of the substation asked him who he was and why he was there. The TFO responded by asking the man for his name, and the man identified himself as "Dave."

27.     The TFO then walked inside the Sheriff's substation and introduced himself to Walker. During their conversation, Walker relayed the following:

      (a) All the money in the suitcase belonged to her,

  (b) She made the money working as a make-up artist and selling hookahs,

  (c) She was bringing the money to California to buy hookahs,

  (d) The suitcase contained "a little over" $80,000,

  (e) "David," who was sitting outside of the Sheriff's substation, is her "brother" and she wanted officers to give the suitcase with the money to him, and

  (f) She has "never had any issues" being stopped with money at an airport.

28. Law enforcement subsequently searched the suitcase, which contained the $179,710 in defendant currency.

29. The individual who identified himself to the TFO as "Dave," and who Walker identified as her "brother," is David Singletary. Singletary has 11 criminal convictions, including for drug trafficking.

30. Singletary told law enforcement that he was there to pick up Walker's belongings.

31. On information and belief, Singletary and Walker are not siblings.

32. On information and belief, Walker did not earn the defendant currency through her make-up or hookah businesses.

33. In 2017, Walker reported to the Internal Revenue Service (IRS) total business income of $9,785.

34. In 2018, Walker reported to the IRS total business income of $12,846.

35. In 2019, Walker reported to the IRS total business income of $12,928.

36. Walker began collecting New York State unemployment compensation in June 2020 and claimed that she had been unemployed since approximately April 2020.

37. On information and belief, Walker did not know the combination to the suitcase she was carrying because the suitcase and its contents belonged to someone else.

38. On information and belief, the individual who Walker called at the TSA checkpoint and who provided her with the combination to the suitcase was Singletary.

39. On information and belief, Walker was transporting the defendant currency for Singletary.

40. A properly trained drug detection dog, who is trained to alert both for narcotics and marijuana, positively alerted to the scent of drugs on the cash found in Walker's suitcase.

41. In October 2020, Walker filed an administrative claim with DEA for the $179,710 claiming – under penalty of perjury – that all the money at issue in this case belongs to her.

## CONCLUSION

42. The facts set forth above support a reasonable belief that the government will be able to meet its burden of proof at trial.

WHEREFORE, pursuant to Supplemental Rule G, plaintiff the United States of America, respectfully requests that the Court:

(1) Issue a Warrant of Arrest *In Rem*, in the form submitted with this Complaint;

(2) Direct any person having any claim to the defendant currency to file and serve their Verified Claims and Answers as required by 18 U.S.C. § 983(a)(4) and Supplemental Rule G;

(3) Enter judgment declaring the defendant property to be forfeited and condemned to the use and benefit of the United States; and

(4) Award such other and further relief to the United States as it deems proper and just.

Dated: December 22, 2020

ANTOINETTE T. BACON
Acting United States Attorney

By: */s/ Adam J. Katz*
Adam J. Katz
Assistant United States Attorney
Bar Roll No. 517894

VERIFICATION

STATE OF NEW YORK   )
                    )  ss:
COUNTY OF ALBANY    )

Christopher Kopec being duly sworn, deposes and states:

I am a Task Force Officer with the Drug Enforcement Administration. I have read the foregoing Complaint for Forfeiture and assert that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement officers.

Dated this 22 day of December, 2020.

_____
Christopher Kopec, Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this _____22nd_____ day of December, 2020.

_____
Notary Public

Jessica Fereday
Notary Public, State of New York
No.: 01FE6053483
Qualified in Rensselaer County
Commission Expires: January 8, 2023

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

## DEFENDANTS
$179,710 in U.S. Currency

**(b)** County of Residence of First Listed Plaintiff: **Albany**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Albany**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Adam J. Katz, Assistant U.S. Attorney (518) 431-0247
United States Attorney's Office, 445 Broadway,
Albany, New York 12207

Attorneys (If Known)
Danielle Neroni, Esq., (518) 366-6933
668 Madison Avenue, Albany, New York 12208

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 21USC 881
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 12/28/2020
SIGNATURE OF ATTORNEY OF RECORD: s/Adam J. Katz

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT **Waived** APPLYING IFP _____ JUDGE **GTS** MAG. JUDGE **TWD**

1:20-cv-1607